[No. 15503.    Department One.—January 4, 1895.]

# HENRY JOHNSTON, RESPONDENT, v. L. I. FISH ET AL., APPELLANTS.

FRAUDULENT CONVEYANCE—DISSEISIN BY VENDOR—EJECTMENT BY BONA FIDE PURCHASERS—TITLE TO CROPS.—Where the vendor of land has made a conveyance which was procured by fraud of the vendee, and has afterwards taken possession of the land in disregard of the conveyance, his action is a disseisin, and his possession is adverse to the whole world; and, pending an action of ejectment by *bona fide* purchasers from the fraudulent vendee, the vendor is entitled to dispose of the crops during the period of his possession, and any one dealing with him, therefore, becomes the owner of what is purchased from him, and their title is not affected by the subsequent determination of the ejectment suit in favor of the *bona fide* purchasers.

ID.—RIGHTS OF PLAINTIFF IN EJECTMENT—USE AND OCCUPATION—FRUITS OF LAND.—The plaintiff in ejectment is entitled to recover from a defendant only the value of the use and occupation, and is not entitled to the fruits of the land, nor can he, after he has established his right to the possession, recover the fruits of the land from one who has purchased them from the defendant while in adverse possession.

ID.—PURCHASER OF CROPS—KNOWLEDGE OF OWNERSHIP OF LAND.—The fact that a purchaser of the crops from the claimant of the land in adverse possession knew that the plaintiffs in ejectment claimed to be the owners of the land does not impair his right of recovery of the crops as against them.

ID.—RIGHT TO FRUITS—VOLUNTEER CROPS.—The right to the fruits of the land does not depend upon the amount of labor expended by the occupant in their production, and it is immaterial whether the hay cut from the land was a volunteer crop, or had been sown under a cropping contract with the occupant, and the fruits gathered belong to him as fully as the crops.

ID.—CROPPING CONTRACT—PURCHASE—REPLEVIN—CONVERSION OF CROPS—TROVER.—One entitled to two-thirds of the crops and fruits under a cropping contract, and to the remaining one-third by purchase from the occupant in adverse possession, is not affected by a judgment in replevin brought against the occupant for the possession of the crops by the plaintiffs in the ejectment suit, to whom possession was delivered in the replevin suit, and such owner may recover damages from them for the conversion of the crops.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Eli R. Chase, S. Tinning, W. H. H. Hart, Aylett R. Cotton, Nowlin & Fassett,* and *Rodgers & Patterson,* for Appellants.     .

*Estee & Miller,* and *John B. Mhoon,* for Respondent.

HARRISON, J.—Action to recover damages from defendants for the conversion of certain hay.

The plaintiff's right of action grows out of the following facts: Prior to March 1, 1881, Henry Benson had been for many years the owner of a tract of land in Contra Costa county, which on that day he conveyed to one Jones. In May of the same year Jones conveyed it to the defendants herein. The conveyance from Benson to Jones was procured by the fraud of the latter, and on the 1st of September of that year Benson took possession of the land, claiming it as his own, upon the ground that by reason of the fraud he was entitled to disregard his conveyance, and remained in possession until evicted under a judgment in ejectment by the defendants herein in March, 1883. Shortly after Benson went into possession of the land the defendants herein brought an action of forcible entry against him, which was tried before a jury and a verdict and judgment rendered in his favor November 12, 1881. In April, 1883, this verdict was set aside and a new trial ordered, but no further step was taken in the action until 1887, when the action was dismissed. November 21, 1881, the defendants commenced an action in ejectment against Benson and others for the recovery of the land and damages for the withholding thereof. The plaintiff herein was made a defendant in this action, but upon his disclaimer he was dismissed from the action November 29, 1881. A cross-complaint was filed in the action in behalf of Benson to avoid his conveyance to Jones on the ground of fraud; and upon the trial of this issue a decision was rendered February 19, 1883, in favor of the plaintiffs therein, upon the ground that they were *bona fide* purchasers from Jones for

value, and after this decision the trial of the issues in the ejectment was had, in which the plaintiffs withdrew their claim for damages, and judgment was rendered in their favor March 22, 1883. On the 1st of December, 1881, the plaintiff herein made a cropping contract with Benson for the cultivation of the land, under which he sowed a portion thereof to hay, which he harvested in the following summer. By the terms of this agreement the plaintiff was to have two-thirds of the crop, and Benson the remaining third; and, after the hay had been cut and stacked, the plaintiff bought from Benson his third of the crop. Subsequently thereto, and while the hay was still on the ground, the defendants herein brought an action of claim and delivery against Benson for the hay, in which, under their direction, the sheriff took possession thereof, and subsequently delivered it to them. This action was brought before the trial was had in the ejectment suit, and issue was joined therein by Benson, but no further proceedings were had therein until 1887, when, upon the stipulation of Benson, judgment for the possession of the hay was entered against him. The present action was commenced in January, 1883, and judgment was rendered in favor of the plaintiff for the value of the hay, assessed at the sum of four thousand dollars.

There is no substantial difference between the facts in this case and those presented in *Page* v. *Fowler*, 39 Cal. 412, and under the principles laid down in that case the plaintiff's right of recovery must be sustained. (See, also, *Martin* v. *Thompson*, 62 Cal. 618; 45 Am. Rep. 663; *Emerson* v. *Whitaker*, 83 Cal. 147; *Groome* v. *Almstead*, 101 Cal. 425; *Stockwell* v. *Phelps*, 34 N. Y. 366; 90 Am. Dec. 710.) Benson's entry upon the land in September, 1881, was made under his claim that, by reason of the fraud perpetrated on him by Jones, his conveyance to Jones was avoided, and that he still remained the owner of the land. Such an entry was not a mere trespass, but it was made under a claim of right adverse to the whole world, and constituted a disseisin of the real owners. The sub-

sequent determination in the ejectment suit that the real owners of the land at that time, the defendants herein, were not affected by the fraud of Jones, for the reason that they were *bona fide* purchasers for value, does not change the character of Benson's entry, or the fact that it was an actual disseisen. The findings of fraud made by the court in the ejectment suit fully show that as between Benson and Jones he could successfully defend his possession of the land. While he thus held possession of the land he had the right to dispose of its fruits, and any one dealing with him, therefore, became the owner of what he might purchase from him. He could either cultivate the land himself, or employ others to do it for him, and he could recompense those whom he employed, either by giving them a definite quantity of the product of the land, or by an aliquot part of the whole. A person entering into a cropping contract with him would have the same right to the share agreed upon as his proportion, as if he had purchased and paid for the same. The real owner of the land could not deprive him of this share, any more than he could take from him such portion of the crop as he had purchased from the occupant. The law gives to the plaintiff in ejectment the right to recover from the defendant, either in the same action or in another, the value of the use and occupation of the land, which is termed "damages," for the withholding thereof; but, while the title to the land is undetermined, the owner out of possession is not entitled to the fruits of the land, nor can he, after he has established his right to the possession, recover the fruits of the land from one who has purchased them from an occupant while such occupant was in the adverse possession. Such a rule would give to the real owner the gross product of the land, irrespective of the labor and expense required in its production. As was said in *Page* v. *Fowler*, 39 Cal. 412: "The very fact that he may recover the rents and profits of the land shows that he cannot recover the crops, for, as was well said in the case of *Stockwell* v. *Phelps*, 34 N. Y. 363, 90 Am. Dec. 710, the owner of the

land in such cases does not recover the value of the crops raised and harvested, but the value of the use and occupation of the land; and the annual crops of grain and grass, which contain both the value of the use of the land and the labor of the farmer, do not, under such circumstances, belong to the owner of the land. It would be an oppressive rule to require every one who, after years of litigation perhaps may be found to have a bad title, to pay the gross value of all the crops he has raised; and it would be an inconvenience to the public if the bad title of the farmer to his land attached to the crops he offered for sale, and rendered it necessary to have an abstract of his title to make it safe to purchase his produce." In *Brothers* v. *Hurdle*, 10 Ired. L. 490, the court said: "But when one who is in the adverse possession gathers a crop in the course of husbandry, or severs a tree or other thing from the land, the thing severed becomes a chattel, but it does not become the property of the owner of the land, for his title is divested —he is out of possession, and has no right to the immediate possession of the thing, nor can he bring any action until he regains possession. The owner of the land cannot sue for the thing severed in trover or detinue as a chattel, for it is not his chattel. It did not become so at the time it was severed, and the title to it as a chattel cannot pass to him afterward, when he regains the possession, by force of the *jus post liminii.*"

The fact that the plaintiff herein knew that the defendants claimed to be the owners of the land, as against Benson, does not impair his right of recovery. If, as against Benson, they had no right to the fruits of the land which he gathered while it was held adversely to them, they would have no right against his vendee, since Benson could give to his vendee as good a title as he himself possessed, and it is equally immaterial whether the hay cut from the land was a volunteer crop or had been sown by the plaintiff. The right to the fruits of the land does not depend upon the amount of labor expended by the occupant in their production. The

apples or strawberries picked by him belong to him as
fully as the potatoes or corn which he may have planted;
and the hay which he cuts is his, whether it is an
annual crop, or whether the land was sown to hay for
the first time while in his occupancy.  The judgment
against Benson for the possession of the hay in the ac-
tion of claim and delivery against him does not aid the
defendants herein.  At the time that action was begun
Benson had no interest in the hay, the plaintiff herein
being the owner of two-thirds thereof under the original
contract, and having acquired the other third by pur-
chase from Benson.

The evidence fully sustains the finding of the court
that the value of the hay at the time it was taken by the
defendants was four thousand dollars.  The defendants
themselves alleged in the affidavit for its seizure in the
claim and delivery action against Benson that it was of
the value of five thousand dollars, and its value is stated
at that amount in the judgment recovered in that action
in their favor.

The judgment and order are affirmed.

GAROUTTE, J., and VAN FLEET, J., concurred.

Hearing in Bank denied.