### In re HAMMOND.

(District Court, N. D. Ohio, W. D.    March 15, 1911.)

No. 1,759.

Bankruptcy (§ 188*)—Title of Trustee—Lien of Existing Mortgage.

A chattel mortgage, permitting the mortgagor to retain possession with power of sale, and subjecting accretions to the stock to the lien of the mortgage, was, under the laws of Ohio, good between the parties, though void as to creditors, and would formerly have given the mortgagee a lien, as against the mortgagor's trustee in bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), vesting in the trustee the title of the bankrupt as of the date he was adjudged a bankrupt: but section 70 is to be construed with the amendment by Act June 25, 1910, c. 412, § 8, 36 Stat. 840, of section 47a (2), by which the trustee is vested with the rights, remedies, and powers of a creditor holding a lien; and, subsequent to the amendment, such mortgagee would have no lien against the trustee, although the mortgage was executed prior to the amendment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286–295; Dec. Dig. § 188.*]

In the matter of Clarence S. Hammond, bankrupt. On petition to review the order of the referee disregarding a claim to a lien. Petition denied.

L. B. Hall and B. F. James, for petitioner.
J. W. Grabiel and D. R. Jones, opposed.

KILLITS, District Judge. September 21, 1909, John J. Fee filed with the recorder of Wood county, Ohio, a chattel mortgage upon a stock of fixtures and merchandise in said county, executed and made to him by the bankrupt, Hammond, and wife, to secure the payment of a note dated on or before the 18th of September, 1910, for the sum of $934.60. The mortgage permitted the mortgagor, Hammond, to remain in possession with power of sale, and provided that all accretions to the stock made to replace the goods sold in gen-

---

eral trade by the mortgagor should come within the lien of the mortgage. There can be no question but that, as to creditors, this mortgage was void, although good between the parties, upon the authority of Collins et al. v. Myers, 16 Ohio, 547; Freeman v. Rawson, 5 Ohio St. 1; Harman v. Abbey, 7 Ohio St. 218; Francisco v. Ryan, 54 Ohio St. 307, 43 N. E. 1045, 56 Am. St. Rep. 711.

On September 17, 1910, Hammond filed a voluntary petition in bankruptcy, a receiver was appointed, who took possession of his store, and subsequently a trustee was elected, and Fee was cited to set up his claim. On the hearing before the referee Fee's claim to a lien upon the merchandise against the trustee was disallowed, the property was offered for sale and purchased by Fee, who tendered his note and mortgage in payment, which was refused. The matter is now before the court on petition to review the order of the referee disregarding Fee's claim to a lien on the merchandise.

As the bankruptcy law stood prior to the amendment of June 25, 1910, on the authority of York v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, Fee should have been allowed the lien he claimed. The question before the court, in its essence, is whether the amendment of 1910 affects Fee's mortgage rights held under a mortgage made prior to the amendment. If it were not for the amendment of 1910, we would be referred for determination of the question before us to section 70 of the bankruptcy act, which read then, as now:

"The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt."

And, following the authority of York v. Cassell, it would transpire that, none of the creditors of Hammond having reduced his claim to judgment, the decisions cited above from the Ohio authorities would have no application, and Fee could enforce his lien as if the bankruptcy petition had not been filed; for, under the Ohio authorities, the mortgage was good between the parties, and, by the language of the bankruptcy act just quoted, manifestly the trustee stood in the shoes of the bankrupt; York v. Cassell being to the effect that only creditors who have reduced their claims to judgment or who have levied by attachment may assert rights against the mortgagee of a mortgage void in the particulars referred to.

But the act of June 25, 1910, amending the bankruptcy law, adds to section 47, par. "a," these words:

"And such trustees, as to all properties in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon, and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied."

It seems that this language might have found a more appropriate place in section 70 of the act; but, however that may be, it is plain that the two sections must now be construed together, and that the

trustee can no longer be said to have the limited title of the bankrupt. Wherefore it need not be argued further that, if this mortgage had been made after the amendment, Fee would have had no lien against the trustee. And we think that the amendment effects the same result in this case, although the mortgage is prior in time.

At any time before or after the adoption of the amendment, any creditor, by reducing his claim to judgment and levying, or by suing out an attachment, could have defeated Fee's mortgage. At all times it was in peril of the individual action of Hammond's creditors in this way. The amendment of 1910 does nothing more under these circumstances than to collectively put these creditors into the position of judgment or attaching creditors by representation. It simply offers another method of effecting a remedy against the mortgage, which already existed, in behalf of the creditors.

In that respect the case before us is not unlike that of Rairden v. Holden, 15 Ohio St. 207. There Holden, as administrator de bonis non, brought an action against the defendants Rairden and Burnet on the administration bond of one for whom they were sureties. At the time the bond was executed, an administrator de bonis non was without power to commence such an action; the only remedy under such circumstances being by action by creditors, legatees, or distributees. Between the date of the execution of the bond and the commencement of Holden's action the Legislature of Ohio enacted a law providing that any succeeding administrator might maintain an action on the bond of an administrator whose powers had ceased against any of the obligors thereof or their legal representatives. The contention against Holden's right of action in the Supreme Court of Ohio was that this statute, as applied in the particular case, was inoperative, as being retroactive, and the inquiry was: What are retroactive laws? The court quotes Judge Story's definition of retrospective laws, in Society for Propagation of Gospel v. Wheeler, 2 Gall. 139, Fed. Cas. No. 13,156, as follows:

"Upon principle, every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective."

Applying that definition as a test to the facts before it, the Supreme Court of Ohio says:

"It seems to us that the statute now in question before us is free from constitutional objection. It neither 'takes away nor impairs vested rights acquired under pre-existing laws.' The rights of creditors, legatees, and distributees of the estate, and those of the sureties on the bond remain the same as before. It creates no 'new obligation, imposes' no 'new duty,' and 'attaches' no 'new disability.' The amount of the liability, and the extent of the duty, of the obligors in the bond, is the same as before; the only difference being that, before the statute, they were liable to a multiplicity of suits by a multiplicity of creditors, legatees, and distributees, and now they are liable to a single suit upon the same obligation and for the same amount, brought by a trustee for the benefit of all creditors, legatees, and distributees of the estate."

It seems to us that the amendment of 1910 very properly applies to this mortgage, and that, as the law in its operation has the same

practical effect as if the creditors of Hammond had severally levied, the appointment of the trustee gives him priority.

Other questions have been raised by Fee, which we have not considered, for the reason that the record does not appear to have saved them. Our conclusion is that the trustee was right in his insistence that the merchandise went into the general estate, and Fee's petition for review is denied.

The trustee petitions for a review of the order of the referee awarding to Fee a lien on the fixtures. The mortgage, although invalid as to creditors on the merchandise, for the reasons given in the authorities cited, was clearly valid as to the fixtures, and the only point made in the case in regard to this feature is that the mortgage appears to have been canceled on the files of the recorder prior to the filing of the voluntary petition. It seems very plain, however, from the testimony, that this cancellation was an inadvertence of the recorder, for which Fee was not responsible, and it also appears that no creditor was deceived by the mistake. We agree with the referee that the equities in this matter are clearly with Mr. Fee, and the trustee's petition for review will be denied.